AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
IN THE MATTER OF THE SEARCH OF INFORMATION ) Case No. 2:16 mj 594
ASSOCIATED WITH CABUDI877@GMAIL.COM THAT IS )
STORED AT PREMISES CONTROLLED BY GOOGLE )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 2339B | Providing material support and resources to a designated foreign terrorist organization. |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan Bailey, Deputy U.S. Marshal/Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec. 2, 2016

_____
*Judge's signature*
Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

City and state: Columbus, OH

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH CABUDI877@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE | Case No. 2:16mj594<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Bailey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. The Affiant is a Deputy United States Marshal ("DUSM") with the United States Marshals Service, Southern District of Ohio in the Columbus, Ohio office. The Affiant has been a DUSM for six years, and has been assigned as a Task Force Officer ("TFO") for the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force ("JTTF") for one year. The Affiant

has been involved in the preparation and execution of numerous federal search warrants for various types of violations. During his current assignment to the JTTF, the Affiant has been a Case Agent and Co-Case Agent for multiple international terrorism investigations. While assigned to the JTTF, the Affiant has received specialized training in international terrorism. Furthermore, the Affiant has received training in computer-related crime as well as the criminal use of email, social media, and telephonic communications.

3. The statements contained herein are based on an investigation conducted by the Affiant and others, on his experience and training as a Special Agent on the JTTF, and on other relevant information provided to him by other FBI Special Agents and law enforcement officials. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of the Affiant's knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2339B (providing, attempting to provide, and conspiring to provide material support to a Foreign Terrorist Organization ("FTO")) have been committed by ABDUL RAZAK ALI ARTAN (hereinafter referred to as "ARTAN"), who, according to immigration paperwork filed with the U.S. government, is a native of Somalia who left Somalia in 2007 with his family to live in Pakistan and came to the United States in 2014 as a refugee. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## **JURISDICTION**

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### DESIGNATED FOREIGN TERRORIST ORGANIZATION

6. On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

7. On May 15, 2014, the Secretary of State amended the designation of AQI as a FTO to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. In an audio recording publicly released on June 29, 2014, ISIL announced a formal change of its name to Islamic State. On or about September 21, 2014, ISIL spokesperson Abu Muhammad al-Adnani called for attacks against citizens—civilian or military—of the countries participating in the United States-led coalition against ISIL. On September 21, 2015, the Secretary added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS. To date, ISIL remains a designated FTO.

### SUBJECT ACCOUNT

3

8. The subject email, **CABUDI877@GMAIL.COM**, is associated with ARTAN through his Huntington National Bank account as well as his Ohio State University student email account. In addition to providing this email address for online banking, ARTAN provided the following contact information to Huntington National Bank: Abdul Ali Artan, 353 Nationwide Blvd, Columbus, OH 43228, which, as will be further discussed below, is ARTAN's known residential address and phone number: 614-815-0162.

## **PROBABLE CAUSE**

9. On November 28, 2016, at approximately 9:42 AM, a black male subject was driving a vehicle in the area of the intersection of West 19th Avenue and College Road North on The Ohio State University campus. According to reports from the scene, the subject purposely struck and attempted to strike multiple pedestrians with the moving vehicle. The subject subsequently exited the vehicle and stabbed and attempted to stab numerous people with a knife. A local officer responded to the scene, encountered the subject, and fatally wounded him. A driver's license found on the person of the subject identified him as ABDUL R. ALI ARTAN, date of birth January 1, 1998, Ohio Driver's License #UJ847597, with an address of 353 Nationwide Boulevard, Columbus, Ohio, address associated with the aforementioned Huntington National Bank account. An Apple iPhone 5s and Dell Laptop Model P51F were also found in the vehicle with ARTAN. There were approximately fourteen (14) victims as a result of this attack.[1]

---

[1] In prior affidavits, your affiant noted that there were approximately nine (9) victims. I have since learned that there were approximately fourteen (14) victims from this attack.

4

10. On or about November 28, 2016, the FBI conducted a search for any social media presence/activity related to ARTAN and identified the following Facebook page as belonging to him: https://www.facebook.com/abdi.razaq.3 . The photo on the Facebook page appeared to match the photo of ARTAN from the driver's license recovered from him at the scene of the attack. At approximately 9:49AM[2], which appears to be the time period just prior to the attack, ARTAN made a public Facebook post which stated in its entirety:

In the name of Allah, the most merciful and the most gracious.

(Screenshot this before it gets deleted)

My brothers and sisters, I am sick and tired of seeing my fellow Muslim brothers and sisters being killed and tortured EVERYWHERE. Seeing my fellow Muslims being tortured, raped and killed in Burma led to a boiling point. I can't take it anymore. America! Stop interfering with other countries, especially the Muslim Ummah. We are not weak. We are not weak, remember that.

If you want us Muslims to stop carrying lone wolf attacks, then make peace with "dawla in al sham." Make a pact or a treaty with them where you promise to leave them alone, you and your fellow apostate allies.

By Allah, we will not let you sleep unless you give peace to the Muslims. You will not celebrate or enjoy any holiday.

Stop the killing of the Muslims in Burma.

Btw, every single Muslim who disapproves of my actions is a sleeper cell, waiting for a signal. I am warning you Oh America!

---

[2] In prior affidavits, your affiant noted that the time was approximately 9:30 AM to 9:45 AM. I have since learned that the time was approximately 9:49AM.

Ano, a message to the Muslims, don't listen to celebrity scholars who sold their deen. I am talking about the likes of Yasir Qadhi, Omar Sulleman, Nouman, Mufti Menk and the list goes on. Beware of Al-Maghrib Institute. Listen instead to our hero Imam Anwar Al-Awlaki.

Let me ask you this question if the Muhammad peace and blessings upon him and his Sahaba were here today, Wouldn't the Western Media call them terrorists?

To conclude.

By Allah, I am willing to kill a billion infidels in retribution for a single DISABLED Muslim/Muslimun.

(Screenshot this before it get deleted)

11. Based on my training and experience, your Affiant understands the term "lone wolf attacks" to refer to a terrorist who commits violent acts alone, even if he/she is influenced or motivated by an ideology or a terrorist organization. Additionally, your Affiant understands that the phrase "dawla in al sham" is another term for ISIL. Moreover, based on my training and experience, your Affiant also understands that the individual referred to as "Imam Anwar Al-Awlaki" is Anwar Al-Awlaki, the now-deceased American-born Islamic lecturer and Al Qa'ida in the Arabian Peninsula (AQAP) leader who espoused violent jihad against Westerners and encouraged the emigration of foreign fighters to countries around the world to engage in violent jihad. Based on my training and experience, your affiant is aware that many ISIL supporters watch and listen to recordings of Al-Awlaki's calls and purported justifications for engaging in violent jihad. AQAP also publishes an English language magazine called *Inspire* that contains propaganda espousing how to conduct various terrorist attacks.

12. Based on my knowledge and experience, jihadist propaganda has long counseled followers to commit acts of violence like the one allegedly committed by ARTAN; i.e., by using vehicles and knives as weapons. For example, the Fall 2010 issue of *Inspire* Magazine, a publication by the media arm of AQAP, described such an operation. It encouraged jihadists to "use a pickup truck as a mowing machine, not to mow grass but to mow down the enemies of Allah." More recently, the Autumn 2016 issue of *Inspire* Magazine, encouraged "lone mujahids" to commit acts of violent jihad "using a truck as done by the Lone Mujahid in the Nice operation." Similarly, the July 2016 issue of *Dabiq*, ISIL's initial official magazine, praised the "brother" who answered "the Islamic State's calls to target nations participating in the Crusader coalition fighting the Caliphate" by "killing more than 80 people and injuring more than 300 others" in the Nice attacks. In September 2016, ISIL changed the name of its official magazine to *Rumiyah*. In November 2016, ISIL released *Rumiyah, Issue 3*, which has an article titled "Just Terror Tactics," which again focuses on a vehicle attack as a primary attack weapon with a secondary attack using a knife or gun to maximize the "kill count" and terror. Some of the highlights in the article state the following:

"Though being an essential part of modern life, very few actually comprehend the deadly and destructive capability of the motor vehicle and its capacity of reaping large numbers of casualties if used in a premeditated manner."

"The method of such an attack is that a vehicle is plunged at a high speed into a large congregation of kuffar, smashing their bodies with the vehicle's strong outer frame, while advancing forward – crushing their heads, torsos, and limbs under the vehicle's wheels and chassis – and leaving behind a trail of carnage."

"Applicable Targets: Large outdoor conventions and celebrations, Pedestrian-congested streets, Outdoor Markets, Festivals, Parades, Political Rallies"

"In a bid to ensure utmost carnage upon the enemies of Allah, it is imperative that one does not exit his vehicle during the attack. Rather, he should remain inside, driving over the already harvested kuffar, and continue crushing their remains until it becomes physically impossible to continue by vehicle. At this stage, one may exit the vehicle and finish his operation on foot, if he was able to obtain a secondary weapon."

"Having a secondary weapon, such as a gun or a knife, is also a great way to combine a vehicle attack with other forms of attacks. Depending on what is obtained, the kill count can be maximized and the level of terror resulting from the attack can be raised. This could also increase the possibility of attaining shahadah, which is the best of departures from this Dunya into the larger expanse of the Akhirah."

13. Moreover, during the course of the FBI's investigation into the Ohio State attack, the FBI learned that, on the afternoon of November 24, 2016, which was Thanksgiving Day, ARTAN used his debit card associated with his aforementioned Huntington National Bank account to purchase a GPS device and iPod from a store located in Columbus, Ohio. According to the GPS records, which the FBI subsequently obtained, at approximately 7:39 PM, ARTAN traveled by vehicle to Washington, D.C. with assistance of the GPS device. He arrived in Washington, D.C. at approximately 3:04 AM on November 25, 2016.

14. On November 25, 2016, at approximately 7:00 AM, video surveillance captures ARTAN purchasing various items, including a machete, at a hardware store located in Washington, D.C. ARTAN used his debit card associated with the aforementioned Huntington National Bank account to make these purchases. Approximately one and a half hours later,

8

ARTAN returned these items, including the machete from the same hardware store. ARTAN subsequently left Washington, D.C. and drove back to Columbus, Ohio. Upon returning to Columbus, Ohio, ARTAN returned the GPS device and iPod to the same store to which he purchased the items the day before. The FBI has retrieved both the GPS device and the iPod from the store. The GPS device contained information from ARTAN's trip to Washington, D.C., while the iPOD remained sealed and did not appear to be used by ARTAN. The FBI conducted interviews of ARTAN's family members, all of whom indicated that they were unaware of ARTAN's travel to Washington, D.C.

15. Although ARTAN did not ultimately conduct an attack in Washington, D.C., based on my training and experience, your Affiant assesses, that ARTAN may have been considering such an attack. I make this assessment based, in relevant part, to the fact that, while in Washington D.C., ARTAN purchased a machete. Moreover, ARTAN drove to Washington D.C. on Thanksgiving Day and his later Facebook post references Americans not being able to celebrate or enjoy any holiday. Finally, ARTAN did ultimately conduct an attack on November 28, 2016 using a vehicle and knife.

16. On November 29, 2016, on behalf of ISIL's media office, A'maq Agency, Twitter user "Omar Ansary" tweeted in Arabic: "A source to A'maq Agency: The executor of the American state of #Ohio attack is an Islamic State soldier who carried out the operation in response to calls to target the citizens of international coalition states."

17. Based on my experience, the behavior displayed by ARTAN during this attack and information found on his Facebook page is consistent with someone who may have been motivated or inspired by social media postings or through direct contact with others on social media or through email to commit acts of violence for the purpose of committing a terrorist

9

attack on behalf of ISIL. Moreover, I know that banks, such as Huntington National Bank, often send bank statements with information of items purchased with funds from the bank account, among other things. As such, we are seeking evidence of terrorist motivations or other criminal intent as well as any evidence of a conspiracy to commit terrorist acts, potentially involving additional accomplices and other evidence of material support to an FTO.

18. On November 30, 2016, a preservation request was sent to Google to preserve all records associated with this account. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

19. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

10

20. A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

21. In my training and experience, Google generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

22. In my training and experience, Google typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.

Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

23. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

24. This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.[3]

---

[3] It is possible that Google stores some portion of the information sought outside of the United States. In <u>Microsoft Corp. v. United States</u>, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of

25. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the Google can show how and when the account was accessed or used. For example, as described below, Google typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the

---

Google. The government also seeks the disclosure of the physical location or locations where the information is stored.

owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

26. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27. Your Affiant respectfully requests that this Court order that the government is allowed to share the information obtained from this search (to include copies of digital media) with any government agency investigating, or aiding in the investigation of, this case or related matters.

Respectfully submitted,

_____
Jonathan Bailey
Deputy U.S. Marshal/Task Force Officer
FBI – Joint Terrorism Task Force

SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS 2nd DAY
OF DECEMBER, 2016

_____
Honorable Elizabeth Preston Deavers
U.S. Magistrate Judge
Southern District of Ohio

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **CABUDI877@GMAIL.COM** that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

  e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

  f. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

  The Provider is hereby ordered to disclose the above information to the government within five days of the issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2339B, those violations involving ABDUL RAZAK ALI ARTAN and occurring after June of 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)     Providing, attempting to provide, and conspiring to provide material support to a Foreign Terrorist Organization (FTO), preparatory steps taken in furtherance of the attack and/or scheme;

(b)     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c)     Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e)     The identity of the person(s) who communicated with the user ID about matters relating to the provision of material support and resources to a foreign terrorist organization, including records that help reveal their whereabouts.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, and my official title is _____. I am a custodian of records for Google. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Google; and

    c.    such records were made by Google as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                                               Signature